### E. C. YARNELL & Co. vs. WILLIAM C. ANDERSON, Jr.

1. Under the plea of payment, the burden of proof is on the defendant, who must prove the payment of money, or something *accepted* in its stead. The word is not a technical one, but when used in pleading in respect to cash, it means *immediate* satisfaction: but when applied to the delivery of a bill or not, or other collateral thing, it does not necessarily mean payment in immediate satisfaction and discharge of the debt, but may be taken in its popular sense, as delivery only, to be a discharge, when converted into money.

2. The taking of a new note of a partner, for a partnership debt, after the dissolution of the partnership, with third persons as security, does not, *per se*, discharge a retired partner. Such a transaction cannot be regarded as anything more than a *prima facie* case against the creditor, liable to be rebutted by other proof.

## APPEAL from St. Louis Court of Common Pleas.

CROCKETT & KASSON, for plaintiff in error.

The court erred in refusing the 1st, 2d and 4th instructions asked for by plaintiff—because

The rule is very old and very firmly settled that negotiable paper is not payment of a demand, unless it is so taken by the holder, as absolute payment; and if not, i is no payment, if it should afterwards turn out to be of no value: Toby vs. Barber, 5 John., 68; 2 Lord Raym., 929, 930; Clark vs. Mundal, 1 Sask., 124; 7 Tenn. R, 66; 3 John's cases, 72; 6 Cranch 264; Johnson vs. Lord, 3 John's cases, 310.

Even if a receipt is given in full, in consideration of the note, and the note is not paid, the party may fall back on his original claim: Schemerhorn vs. Loines, 7 John's 311; Mulden vs. Whitlock, 1 Bowen 290.

"An obligation to pay is not the same thing as the actual payment:" Cumming vs. Hackley, 8 John's 206.

The new notes, at most, only suspended the right of action on the old until their maturity, if they had so much effect as that: Huireg vs. Sawyer, Tany, T. 1802. M. S. Sup. W. Y., (quoted in) Putnam vs. Lewis, 8 John. 398; Sneed vs. Winter, post.

Yarnell & Co. vs. Anderson, Jr.

In this case the notes were never negotiated, but always held by the original parties, and the reason sometimes given for treating them as payment, *to protect innocent holders,* is wanting: Witherby vs. Mann, 11 Johns., 12 Johns, 409.

- Arnold vs. Camp is a case of the same general impression with this: i. e., one partner gave his own note and took up the note of the late co-partnership, which was afterwards re-exchanged upon a threat made by the plaintiff. Judgment was for the defendant there, because the facts showed that the note of the one was taken at the time in satisfaction, and so understood and agreed; and also, Ch. J. Thompson says, "there is nothing to show that the maker of it was insolvent, or unable to pay his individual note."

This case differs from that in the most substantial particulars:

1st. The particular action of the plaintiff shows, that *he* had no intention to discharge the original note by the new arrangement, for he took counsel to guard against it.

2d By his receipt, he gave notice to the other party that it was to be discharged only in case of payment of the new notes.

3d. He continued to pursue his claim against the other partner in the mean time, and, after that partner of his giving of the new notes, who never at that time repudiated his liability as an original undertaker.

4th. It does not appear here, that all the liabilities in the new notes are utterly worthless, and unable to pay.

Nothing can make more eminent distinctions between two cases for the application of legal principles, than this. The declaration of the act of the parties, before, at, and after the new arrangement, render the presumption, that the new notes were taken in satisfaction of the old one, impossible and absurd.

If the power of one partner, to bind the firm after dissolution, by a new and differing contract, may not be exercised, dissolution certainly does not terminate the power of that other partner to bind himself. This is all the plaintiffs' claim—that they had the right, in law and in equity to acquire any additional security and proof for a trembling debt, which might be in their power; and that they might do this without detriment to their original claim. And they stipulated, and acted, that it should so be without detriment, from the first, for security.

The mere giving of time to a debtor, does not discharge a security, *a fortiori,* a co-promiser: Ferguson vs. Turner, 7 Mo R., 498.

The conduct of the defendant shows his own understanding of the arrangement to be concurrent with that of the plaintiffs, and the defendant has in no way suffered any damages by, or in consequence of this new arrangement, and has no *equitus* with him whatever.

In the opinion of the Supreme Court of the United States, "a note, without a special contract, will not, of itself, discharge the original cause of action." Marshall, C. J., Shuky vs. Mandeville, 6 Cranch 253. Even if a higher security be taken from the original promise for the same debt, it is only *prima facie* extinguishment. And if it should appear that it was *not* taken in satisfaction, it will not operate as an extinguishment. "It is a mere question of intention," Story, J., U. S. vs. Lyman, 1 Mason, 482.

When a note is not received as payment, it is no extinguishment. Higgins vs. Packent, 2 Hall, N. Y. 547. Or if it is received as conditional payment, and there is no want of due diligence to collect, the original liability continues for the protection of the creditors. 1 Cranch 181; Clark vs. Young & Co. 1 Can. R. 288.

Unless the note so conditionally received is passed away to another holder, when it is an extinguishment, in order to save the debtor from double payment. Hauis vs. Johnston, 1 code 543 (in which case, a receipt, like the one in the case at bar, was given.)

The plaintiffs do not claim that the defendant's liability was in any way enlarged, or affected by the giving of the new notes. The defendant asserts this, while the plaintiffs assert the contrary. If the defendant choses to avail himself of a contract made between the other parties, he must take the whole of it, including the effect of the receipt, not select what is favorable to him and reject the rest.

The parties had an undoubted right, either to pledge the new notes, or to make them payment.

---

Yarnell & Co. vs. Anderson, Jr.

---

The evidence shows conclusively, that they were taken as security. If there were a doubt, the cases already quoted, show conclusively, that that doubt is in favor of the plaintiffs. The presumption is against their being taken in payment; the agreement to the contrary must be specially shown. No such agreement is or can be shown.

The mere surrender of the old note, unexplained, would furnish evidence of the agreement to extinguish, according to the authority of Arnold vs. Camp; Olcott vs. Rathburn, 5 Wend. 490. But here it is explained and controlled, so as to have no effect.

The plaintiffs had a right at that time to expect the payment of the new notes; and conceded the new provision of the old one, to one of the partners; but, expressly reserving his right of action upon the original consideration, against both the original parties.

What was the objection to this? The note being part due was of no value, as a note, for any other purpose than as evidence of a claim; and here other evidence abounded. The surrender of it being explained consistently with the reservation of his former rights, furnishes no evidence at all for the defendant. The principles of the case of Burdick vs. Sran, 15 John, 248, cover this case completely. In some States the new paper is prima facie a discharge of the old debt, but is capable of explanation, being only a matter of the burden of proof, whether on the plaintiff or on the defendant. But in none, when explained and controlled, is it payment.

The court also erred in giving the instruction asked by the defendants, nakedly, without qualification :

1st. There was evidence tending to show Anderson's consent thereto, without its operating, or being intended to operate as a discharge, and this should have been incorporated in the instruction.

2nd. It should have been stated that the payment of int. and 4 ch., was the consideration of the extension, and not taken merely as the proper mercantile appurtenance of the plaintiff's debt, when it should be finally paid.

3rd. The mere indulgence to one partner of time, in payment of a co-partnership debt does not operate to discharge the other ipso facto, nor in the case of an endorser of a note, or a surety. Sneed vs. Wister, 2 A. K. Marsh. (K. Y.) 285-6; a case directly in point with this. See also, Patu vs. Talcott, 1 Can. 359.

4th. It is doubtful if there was any arrangement which prevented plaintiff from suing both partners on the original contract at any time after the taking of the new notes, or, if there was such an arrangement, it was only until the non payment of the new notes. It is of no importance under the facts of the case.

## POLK, for defendant in error.

1st. The instruction given by the court of common pleas on the prayer of the defendant, Anderson, was legal and right. Story on partnership p. 239, ch. VIII, sections 155-6; Evvers vs. Drummond 4 Osp. R. 89; Reed vs. White et. al., 5 Osp. R. 122; Bedford vs. Drakin et. al.; 2 Stark. 178; 3 Eng. C. L. Rep. 303; Hart vs. Alexander, 2 Mns. & Welsb, 489.

In the above cases the court declare what the facts prove. But in this case the court have the jury to say what weight the evidence shall have, and only declare the effect in law of the facts that the jury may find.

2nd. The two first instructions prayed for by plaintiff are substantially but the converse of the instruction given by the court, and ought, therefore, to have been refused for the same reasons that the defendant's instruction was given.

3rd. It was a sufficient reason for refusing plaintiff's third and fourth instructions, that defendant Anderson had no notice of the arrangement between plaintiffs and J. W. Cosse, and neve assented to the same; these instructions both taking it for granted that the arrangement between the Yarnells and Cosse was known to Anderson, whereas no such notion was shown.

BIRCH, J., delivered the opinion of the court.

In this case the plaintiffs originally declared in assumpsit against Cosse and Anderson, late co-partners, but the former having pleaded his discharge under the bankrupt law, the suit was dismissed as to him and prosecuted against Anderson alone. The pleas relied upon were the general issue, payment and set off. It was proven by the only witness who was introduced that the defendant and Cosse were in partnership until the month of May, 1841. He also proved, that as the authorized agent of the plaintiffs he had divers interviews with both the late partners, commencing about the month of October, 1841, in reference to a note executed by them (as partners) to the plaintiffs, on the 24th of August, 1840, for the sum of $1835 12, payable at 6 months. Anderson stated that they had dissolved partnership, and that the terms of the dissolution were that Cosse was to take all the assets and pay all the debts, and had given him (Anderson) security to hold him harmless, from all the debts and liabilities. He also said there was stock enough to pay all the debts, and that besides, there was $4,000 or $5,000 due the concern which had been turned over to Cosse. Anderson was then doing a grocery business on the levee One of the plaintiffs having come to St. Louis in November afterwards, agreed with Cosse, without intending thereby to discharge the liability of Anderson as a promisor of the original note, (having, indeed, sought proper legal advice how to shape his conduct so as to avoid it,) to receive, conditionally, three notes signed by Cosse, and endorsed by one Burnett, and by Conn, Sprigg and Green, at 9, 12 and 15 months, which were given accordingly. Upon the delivery of these notes, the plaintiffs gave to Cosse a receipt thereof stating that said notes, "when paid," would be in full for the original notes of Cosse and Anderson, and also for the amount of a certain book account, against the same parties, therein mentioned. These notes and receipts bear date November 27th, 1841, and on the same day the plaintiffs gave up to Cosse the original note alluded to.

In March, 1842, the witness again called upon Anderson, who was in business upon the levee, in behalf of the plaintiffs. Anderson declined doing any thing until the first of the three notes should fall due, but did not deny his liability to the plaintiffs. In still another conversation with Anderson, he desired the witness to call on Burnett, one of the endorsers, and try and make the money out him; saying he thought Burnett had collaterals from Cosse to secure his endorsement. The witness did so, but met with no success, Conn, Sprigg and Green failed before the maturity of the notes, and Burnett soon afterwards. Suit was

brought against Burnett, but not against the other endorsers, for they had nothing; and nothing was realized from either of them. At the time of their endorsement, Conn, Sprigg and Green were auction and commission merchants, and Burnett a wholesale dry goods merchant.

On cross examination, the witness testified that there was neither any express admission or denial on the part of Anderson concerning his liability; nothing being said about it, and that he did not inform Anderson of the arrangements between Cosse and the plaintiffs, but that in all his interviews he acted under the belief that Anderson was still liable. The defendant produced the receipt alluded to, and an account between the plaintiffs and Cosse and Anderson, dated November 27th, 1841, showing a balance then due plaintiffs of $2150 57, and a minute of the three notes already mentioned appended and so carried out as seemingly to leave a balance of 65 cents due to the plaintiffs.

This being the substance of all the testimony, the plaintiffs asked, and the court refused, the following instructions:

1. If the plaintiffs received these 3 notes from Cosse as collateral security for the original claim sued, and not in payment, and if the notes were never paid, the receiving of them was neither payment nor extinguishment of the claim sued.

2. That however the defendants or either of them understood the delivery of these notes, yet their delivery and acceptance was not in law payment, unless the plaintiffs also understood it so, and agreed to take them in absolute satisfaction of the original demand.

3. That if Anderson assented to the arrangement for extension, and the receiving of said three notes by the plaintiffs, and if at that time it was intended by the parties to the arrangement thereby to release Anderson, and Anderson, knowing this, assented to the arrangement, then the receiving the new and surrendering the old notes does not operate in law to discharge Anderson's liability, if he was previously liable, unless the new notes had been paid.

4. That if the plaintiffs received the three notes, and surrendered the old one thereupon; but received the three notes not in payment, but only as collateral security; and if Anderson knew this, and assented to it, then Anderson was not, by this arrangement released from a liability which previously on the original demand, if any, unless the new notes were paid. The defendant thereupon asked, and the court gave the following instructions:

"If the jury find from the evidence that the plaintiffs, knowing of the dissolution of the firm of Cosse & Anderson, gave time to the defendant Cosse, on the indebtedness of Cosse & Anderson to them, upon said

Cosse paying interest on said indebtedness for the period of such for-bearance, with the current rate of exchange on Philadelphia, and also took the notes of James M. Cosse, endorsed by Isaac Burnett and Conn, Sprigg and Green, for such indebtedness, interest and exchange, at 9, 12 and 15 months, they will find for the defendant Anderson."

Regarding the matter of interest and notes as nothing beyond that to which the plaintiffs were reasonably entitled, it seems to us that the court below did not instruct the jury with sufficient plainness and per-spicuity, and that this judgment, consequently, ought not to stand. Un-der the plea of payment, (upon which this case turned,) "the burden of proof is on the defendant, who must prove the payment of money, or something accepted in its stead. The word is not a technical one, but has been imported into law proceedings from the exchange. When used in pleading in respect to cash, it means immediate satisfaction; but when applied to the delivery of a bill or note, or other collateral thing it does not necessarily mean payment in immediate satisfaction and discharge of the debt, but may be taken in its popular sense, as delivery only, to be a discharge when converted into money." 2 Greenleaf, 516. Ap-plying, then, the testimony before us to the pleading as above explain-ed, it is seen that so far from intending that the transaction with Cosse should be held to "necessarily" imply an "immediate satisfaction and discharge" of the pre-existing debt, the receipt which was executed by the plaintiffs, and which the defendant had possession of and used upon the trial, expressly avoids such implication, by explicitly conforming to and setting forth the "popular sense" in which such collaterals are usu-ally received, by stating expressly that "when paid," these notes would be in full of the original one of Cosse & Anderson.

It would appear from the testimony that Anderson understood, and at last tacitly acquiesced in this arrangement, and that the probable reason why he said in one of his interviews with the agent of the plain-tiffs that he could do nothing until the first of the three notes fell due, was, that until the arrangement which Cosse had thus made was for-feited by his neglect, whereby he (the defendant) would become liable for the payment of a debt against which he had been indemnified, he would have no legal right to resort to his indemnity  This, however, was but a circumstance, along with others, which might have entered into the deliberations of the jury, under such instructions from the court as would have left the defendant liable for his original debt, unless he proved that it had been fairly paid, according to the purpose and un-derstanding of all the parties, "either in money or something accepted in its stead."

The instruction given by the court was therefore at least objectionable, in substituting, in the connexion they occupy, the ambiguous words "for such indebtedness," in lieu of the plainer, less equivocal and only efficient ones, "in discharge of such indebtedness;" and although more was seemingly asked for by the plaintiffs than may have been deemed necessary for the case presented by the testimony, still, as we are unable to perceive any respect in which they could have misled the jury, we recognize no sufficient reason why they were not given as prayed for. For these reasons the judgment of the court of common pleas must be reversed, and the cause remanded.

NAPTON, J.

The instruction given by the court declares that the taking of the new note of Cosse, with the security of Conn, Spring and others, *per se* discharged the retired partner, Anderson. The opinion of Lord Kenyon, in the cases of Evans vs. Drummond (4 Esp. 89) and Reed vs. White (5 Esp. 122,) go for to sanction the instruction; but the current of later authorities, and especially in this country, are decidedly against viewing such a transaction as any thing more than a *prima facie* case against the creditor, liable to be rebutted by other proof. It would seem to be clearly established, that so far as the plaintiffs and Cosse were concerned, it was well understood that these new notes were not taken in satisfaction of the original demand, but merely as collateral security. As Anderson entrusted Cosse with the management of the business of the partnership, after his retirement, any loss sustained by him, by reason of Cosse's failure to communicate the particulars of the arrangement with plaintiffs, may with more propriety fall upon him than upon the plaintiffs; Cosse was his agent and not theirs. The cases of Bardick vs. Green, 15 John R. 248, and Sneed vs. Wesler, 2 A. K. Marsh, are in point.